UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2008 JAN 15 P 4: 04

ROSALIND YOUNGBLOOD

**DO NOT PUBLISH**

VERSUS

CIVIL ACTION NO. 07-250-A

COVENANT SECURITY SVC,
LLC, ET AL

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the court on a motion for summary judgment (doc. 20) by one of the defendants, Air Products and Chemicals, Inc ("Air Products"). The motion was accompanied by defendant's memorandum in support (doc. 21), statement of uncontested facts (doc. 22) and exhibits (doc. 21, Exs. A-C). Plaintiff, Rosalind Youngblood ("Plaintiff"), has opposed the motion (doc. 28), submitted a statement of disputed facts (doc. 28, pp. 2-3) and an exhibit (doc. 28, Ex. A). There is no need for oral argument and the matter is now submitted. Jurisdiction is based on 28 U.S.C. 1332.

### FACTS AND PROCEDURAL HISTORY

Defendant, Air Products, in its Statement of Uncontested Facts (doc. 22), sets forth the following facts that it claims are material to the motion now before the court, as required by Local Rule 56.1. The material responses of Plaintiff are noted in footnotes where appropriate.

1

1.      Plaintiff, Rosalind Youngblood, alleges to have sustained personal injuries as a result of a slip and fall while she was working as a security guard at Air Product's St. Gabriel, Louisiana facility on April 29, 2006.

2.      The plaintiff had been hired by co-defendant, Covenant Security Services, LLC ("Covenant"), on April 17, 2006, and immediately upon hiring, was assigned to work as a full time security guard at Air Products facility in St. Gabriel.

3.      Prior to being hired to work as a security guard at Air Products in April, 2006, the plaintiff had never heard of Covenant.  She didn't apply for work at Covenant's offices, but filled out a job application and underwent orientation at Air Products.

4.      Upon being hired to work at Air Products, the plaintiff received no training or orientation from Covenant, her nominal employer.

5.      Although she was not familiar with Covenant prior to April, 2006, the plaintiff had worked at Air Products previously through other private security companies, and when she returned to Air Products in April, 2006, she resumed the exact same duties and responsibilities that she had when she was sent to work at Air Products by other security contractors.

6.      The plaintiff reported to work each day at the main gate of the Air Products plant, and along with the Air Products employees, used an Air Products "swipe card" to access the premises.[1]

7.      Air Products conducted the plaintiff's orientation upon her hiring in April, 2006, and other than her uniform, furnished her with virtually all the tools and equipment she needed to perform her work as a security guard.  Air Products issued the plaintiff a flashlight, safety glasses and a hard hat.

---

[1]Plaintiff submits, as a material fact in dispute, "[w]hether Covenant maintained control over plaintiff as required by its agreement with Air Products" (doc. 28, p. 2).  This submission is apparently intended by Plaintiff as a reference to language within the purchase order providing that Covenant would "recruit, train, supervise, direct, discipline, and if necessary, discharge any and all personnel working in Air Products' security positions" (see doc. 21, Ex. C, § 4.2.1).

8.    After being hired in April, 2006, the plaintiff performed all of her work at the Air Products facility until August, 2006, when her employment was terminated. She was never assigned by Covenant to work at any sites other than the Air Products facility in St. Gabriel, Louisiana.

9.    As a security guard, the plaintiff bore the duty and responsibility to protect Air Products personnel and property in connection with its day-to-day operations, and if a security issue arose that exceeded her level of responsibility, she would report it to other Air Products personnel who would address the security concerns further, as appropriate.

10.   Although the plaintiff was nominally employed by Covenant, a private security contractor, she was sent to work for– and at– Air Products, pursuant to an agreement (purchase order) between Air Products and Covenant.[2]

11.   The plaintiff acquiesced to the arrangement whereby she would be sent to work as a security guard for Air Products upon being hired by Covenant in April, 2006.

12.   One hundred percent of the plaintiff's work through her nominal employer, Covenant, was as a security guard at the Air Products site, and was therefore, a "considerable" length of time relative to her employment with Covenant.

13.   Air Products had the authority to terminate the plaintiff as a security guard at its facility.[3]

---

[2]Plaintiff submits, as a material fact in dispute, "[w]hether plaintiff can be a borrowed employee of Air Products when, by the nature of its agreement with her actual employer, Covenant, Air Products contractually agreed that it is not, in any form, the employer of the plaintiff" (doc. 28, pp. 2-3).  This submission apparently refers to language within the purchase order providing that "[i]t is understood and agreed that [Covenant] shall be and remain an independent [c]ontractor, maintaining direction and control of its employees and operations and neither [Covenant] nor anyone employed by [Covenant] shall be deemed to be a servant, employee or agent of [Air Products]" (see doc. 21, Ex. C. Art. 8).

[3]Plaintiff submits, as a material fact in dispute, "[w]hether Covenant maintained control over plaintiff as required by its agreement with Air Products" (doc. 28, p. 2).  This submission is apparently intended by Plaintiff as a reference to language within the purchase order providing that Covenant would "recruit, train, supervise, direct, discipline, and if necessary, discharge any and all personnel working in Air Products' security positions" (see doc. 21, Ex. C, § 4.2.1).

14.   The plaintiff was paid based on the number of hours she worked at the Air
      Products facility, and in accordance with the contractual arrangement whereby
      Air Products paid Covenant for the security work performed by the plaintiff.

In March of 2007, Plaintiff filed suit in the Eighteenth Judicial District Court,

Parish of Iberville, listing Covenant, Air Products, ESIS New Orleans WC, and ABC

Insurance Company as defendants.[4]   Plaintiff alleges that acts of fault, gross and

wanton negligence and lack of skill by defendant, Air Products, contributed to the

cause of the incident and her resulting injuries.[5]   The petition states that Plaintiff

sustained cervical and lumbar spine sprains, full disability, and psychiatric and

psychological damages as a result of the accident.  The petition also states that she

has suffered and/or will suffer past, present and future medical expenses as well as

past, present and future pain and suffering, psychiatric and psychological damage,

and emotional distress.  (doc. 1, pp. 7-8).

On April 17, 2007, defendants removed the case to the United States District

Court, Middle District of Louisiana on the basis of diversity jurisdiction (doc. 1).  On

November, 8, 2007, defendant, Air Products, filed this motion for summary judgment,

---

[4]Plaintiff's petition states that ESIS New Orleans WC was joined due to her belief that the
company had issued to Covenant a worker's compensation policy that was in effect at the time of
her alleged accident.  ABC Insurance company was joined due to plaintiff's belief that it had issued
to Air Products a liability insurance policy that was in effect at the time of the alleged accident.
(doc. 1, p. 7).

[5]Plaintiff's petition states that the acts of fault, gross and wanton negligence and lack of skill
by defendant, Air Products, included, inter alia, failure to repair leaks; failure to take precautions
when there was inclement weather, failure to train and advise personnel to monitor area; failure to
place a warning sign; failure to exercise reasonable care under the circumstances prevailing at the
time of the accident; and failure to take proper precautions to avoid the accident and alleged
injuries as a result of a defective building in need of repair.

contending that the facts of this case demonstrate that Plaintiff was a borrowed employee of Air Products.  Air Products argues that, as a result of Plaintiff's status as a borrowed employee, she is precluded from asserting tort claims against Air Products (doc. 21, p. 2).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.  *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).

Defendant, Air Products, argues that, under the facts of this case, the plaintiff was a borrowed employee of Air Products at the time of the alleged accident, and

under La. R.S. 23:1032, she is, therefore, legally barred from pursuing a tort claim against Air Products (doc. 21, p.p 18-19).[6]

Because this is a diversity action, Louisiana substantive law applies. See *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).   The Louisiana Legislature has codified the borrowed employee doctrine by enacting La. R.S. 23: 1031(C).  *Stephens v. Witco Corp.*, 198 F.3d 539 (5th Cir. 1999).  Under La. R.S. 23:1031(C), employers of borrowed employees 'shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.[7]  *Walker v. J.P. and Sons Inc.*, 877

---

[6]La. R.S. 23:1032 provides in pertinent part:

> A(1)(a)  Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employer or principal for said injury, or compensable sickness or disease.

> A(1)(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.

[7]La. R.S. 23:1031c) provides:

> In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter.  As between the special and general employers, each shall have the right to seek contribution from the

So.2d 1108, 1110 (La.App. 5 Cir. 2004).  Therefore, in the case at bar, if Plaintiff, at the time of her alleged accident and injury, was a borrowed employee of Air Products, she is barred from bringing a tort action against Air Products and her sole remedy lies in worker's compensation.

"The issue of whether a borrowed servant relationship exists is a matter of law for the court to determine." *Griffen v. Wickes Lumber Co.* 840 So,2d 591, 596 (La.App. 1 Cir. 2002) *writ denied*, 853 So.2d 640 (La.2003); see also Capps *v. N.L. Baroid-NL Industries, Inc.*, 784, F.2d 615 (5th Cir. 1986) (stating that "[t]he district court decides the borrowed employee issue as a matter of law").  "[I]f sufficient basic factual ingredients are undisputed, the court may grant summary judgment." *Id.*  To determine whether a plaintiff is a borrowed employee the court must consider the following nine factors:

(1) Who had control over the employee and the work she was performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

---

other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability.  Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed.  The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate its relationship with the employee?

(6) Who furnished the tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

No single factor is determinative and parties to a contract cannot automatically prevent a legal status like that of borrowed employee from arising merely by saying in their contract that it cannot arise. *Billizon,* 993 F.2d at 105.

**Who had control over the employee and the work she was performing, beyond mere suggestion of details or cooperation?**

The first factor weighs in favor of a finding that Plaintiff was a borrowed employee. Plaintiff testified that she reported for work every day at the Air Products plant and logged in and out of the plant by swiping an Air Products card exactly as she had done when she had been employed by Weiser Security Services, Inc. ("Weiser") (doc. 28, Ex. A, pp. 54-55). She stated that her orientation presented nothing concerning Covenant and consisted of watching the same Air Products video that she had seen previously while working at the Air Products plant under

8

employment by other security companies (*Id.* at 94). She testified that she was hired to perform the same job that she had previously been hired to perform while working for Weiser,[8] and the routine was the same as it had been when she had previously worked at Air Products while employed by Weiser, Olsten Security Services ("Olsten") and Lofton Security Service ("Lofton")(*Id.* at 134, 140).

If she detected a security threat, she would contact the Air Products plant manager rather than an employee of Covenant (doc. 28, Ex. A, p. 99). Plaintiff stated that Air Products required her to wear safety boots and long sleeves while at work (*Id.* at 173). She also testified that she knew that if someone at Air Products was not satisfied with her job performance they could have her terminated (*Id.* at 106).

Plaintiff argues that Covenant maintained control over Plaintiff's activities and notes that the purchase order made between Air Products and Covenant provides that the contractor will "recruit, train, supervise, direct, discipline, and if necessary, discharge any and all personnel working in AIR PRODUCTS security positions," restricts the employees to the use of "designated entrances and exits during working

---

[8]Plaintiff did testify that, when she was hired by Covenant, security was tighter and she was trained by her Covenant supervisor to use a mirror to search the under-carriage of vehicles entering the plant. However, the supervisor who trained her in that instance was Pat Lott, the same person who had been her supervisor when she was employed at the Air Products plant by Weiser, Olsten Security Services and Lofton Security Service (doc. 28, Ex. A, pp. 56-57,136). Plaintiff also testified that, each time Air Products hired a new security company, the people from the previous company all switched over to the new security company and continued to work at Air Products, performing the same jobs (*Id.*at 60, 64, 66, 70).

9

hours," and "restrict[s] employees to assigned areas during working hours" (doc. 28, p. 6 (*quoting* doc. 21, Ex. C)).

The terms of the contract, however, do not ordinarily provide a sufficient basis to deny summary judgment when the other factors point toward borrowed servant status. See e.g., *Ledet v. Quality Shipyards, Inc.*, 615 So.2d 990, 994 (La.App. 1 Cir. 1993) (affirming the trial court's grant of summary judgment for defendant despite language in the contract providing that the supplied employees were not to be considered employees of the defendant "for any reason whatsoever"); *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988) (finding that the employee was a borrowed employee despite language in the contract providing that he was not "to be considered the agent, servant or representative of Amoco" and noting that "the reality at the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter or waive express contract provisions"); *Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 529 (5th Cir. 1986) *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735) (1987) (upholding summary judgment for defendant despite contractual terms providing that the plaintiff's employer was an independent contractor).

Further, the contractual provisions cited by Plaintiff provide limitations placed on security personnel by Air Products and thus contradict Plaintiff's claim that Air Products did not have control over her and the work she was performing.

**Whose work was being performed?**

The second factor also weighs in favor of a finding that Plaintiff was a borrowed employee under Louisiana law. Plaintiff testified that her job was to ensure security and safety at the Air Products plant (doc. 28, Ex. A, p. 99). She stated that she was assigned to the main gate and given the responsibility of: 1) signing in and inspecting the personnel and vehicles entering or leaving the plant (*Id.* at p. 98); 2) showing first time visitors an Air Products safety video (*Id.* at 42); and 3) locking up buildings at the plant and unlocking them one at a time for the cleaning crew (*Id.* at 146-48).

All of the job duties stated by Plaintiff serve to further the work of the Air Products plant. See *Cantrell v. BASF Wyandotte*, 506 So.2d 793 (La.App. 1 Cir.) *writ denied*, 512 So.2d 1178 (La.1987) (stating that "[p]laintiff's activity, that of being a security guard, was a part of the routine or customary day-to-day operation of the Wyandotte plant. Security is essential to the operation of a manufacturing plant and is therefore an integral part of the business.).

**Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?**

The third factor also weighs in favor of finding that Plaintiff was a borrowed employee of Air Products. Plaintiff argues that, in light of language in the purchase order, the court cannot find that Air Products had control over Plaintiff and the work she performed without also raising an issue of disputed fact regarding whether there

11

was an agreement, understanding or meeting of the minds between Air Products and Covenant.[9]

However, the fact that the parties to a contract act inconsistently with the language of that contract does not preclude a finding that an employee was a borrowed employee for the purposes of summary judgment. See *e. g. Ledet*, 615 So.2d at 994 (affirming the trial court's grant of summary judgment for defendant despite language in the contract providing that the supplied employees were not to be considered employees of the defendant "for any reason whatsoever"); and *Melancon*, 834 F.2d at 1245 (finding that the employee was a borrowed employee despite language in the contract providing that he was not "to be considered the agent, servant or representative of Amoco" and noting that "the reality at the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter or waive express contract provisions").

---

[9]Plaintiff points to language in the purchase order providing that the contractor will "recruit, train, supervise, direct, discipline, and if necessary, discharge any and all personnel working in AIR PRODUCTS security positions," and that "[i]t is understood and agreed that the Contractor shall be and remain an independent Contractor, maintaining direction and control of its employees and operations and neither the Contractor nor anyone employed by the Contractor shall be deemed to be a servant, employee or agent of AIR PRODUCTS." Article 18 of the purchase order then provides that the contract constitutes the sole agreement between the parties and states that the agreement cannot be modified, altered, amended, changed or cancelled nor any provision hereof waived or abrogated . . . ." (doc. 28, p. 8 (quoting doc. 21, Ex. C)).

Articles 5, however, provides that Air Products may, "at any time, make changes in, additions to, or deletions from the work to be performed under this Agreement . . . ." Article 6 provides that Air Products may "cancel and/or terminate this Agreement for convenience in whole or in part, at any time."

12

Neither party contests the fact that Covenant provided security personnel to the Air Products plant pursuant to the written purchase order made between Covenant and Air Products (*see* doc. 21, Ex. C).  Therefore, the court concludes that there was an agreement between the original and borrowing employer.

**Did the employee acquiesce in the new work situation?**

Plaintiff testified that she had worked at Air Products while previously employed by other security companies (doc. 23, Ex. A, pp. 134, 140).  Though the name of the security company changed, the people remained the same and so did her duties (*Id.* at 64, 134).  When called by her previous supervisor to return to Air Products, she applied for the job because she was familiar with it (*Id.* at 90).  She stated that she wanted to work at Air Products because she "liked Air Products," was familiar with the plant and "it felt more like home" (doc. 28, Ex. A, p. 95).  For these reasons, the court concludes that Plaintiff acquiesced in the new work situation and this factor weighs in favor of finding that Plaintiff was a borrowed employee of Air Products.

**Did the original employer terminate its relationship with the employee?**

This factor does not require a lending employer to completely sever its relationship with the employee in order for the factor to weigh in favor of a finding of borrowed employee status.  *Capps*, 784 F.2d at 617.  In considering this factor, the emphasis should be on the lending employer's relationship with the employee while the borrowing is taking place.  *Hall*, 670 So.2d at 547; *Ledet*, 615 So.2d at 994.

Where the lending employer's control over the employee is "nominal at most," this factor favors a finding of borrowed employee status. *Melancon*, 834 F.2d at 1246.

Some of the evidence suggests that Covenant maintained its employment relationship with Plaintiff.   Upon Plaintiff's return to Air Products, a Covenant supervisor showed her how to use a mirror to check the undercarriage of vehicles, and in addition to swiping her Air Products card, Plaintiff also signed in with Covenant by using a clipboard at the guard shack (*Id.* at 105, 136).  After Plaintiff's alleged accident, Covenant had her view a safety video and take a test (*Id.* at 243). Finally, Plaintiff's employment was eventually terminated by Covenant (*Id.* at 223-24).

Other evidence, however, suggests that Plaintiff's employment relationship with Covenant was nominal as compared to her employment relationship with Air Products.  Plaintiff stated that she applied for the job in response to a call from someone who had been her supervisor at the Air Products plant when she had worked there previously.  Prior to the call she had not heard of Covenant and she testified that she took the job at Air Products because she liked working at the Air Products plant and was familiar with it.  (doc. 28, Ex. A, p. 90).

As noted earlier, Plaintiff stated that, while employed by Covenant, she performed the same job, with virtually the same routine, that she had performed while employed by other security companies at Air Products.  She worked exclusively at Air Products during her employment with Covenant and swiped an Air

14

Products card when checking in.  If Plaintiff noted a security concern, she reported it to Air Products rather than Covenant.  Though Plaintiff stated that a Covenant supervisor worked at the Air Products plant full-time, no Covenant supervisor was present on the day of her alleged accident and Plaintiff first reported the incident to the Air Products shift supervisor (doc. 28, Ex. A, pp, 96, 164, 184-85).

Accordingly, the court concludes that this factor weighs neither in favor of, nor against, a finding of borrowed employee status.

## Who furnished the tools and place for performance?

As stated earlier, Plaintiff reported every day for work at the Air Products plant's guard shack and did not work anywhere else during her employment with Covenant.  Air Products also provided Plaintiff with a hard hat, safety glasses, flashlight and walkie-talkie (doc. 28, Ex. A, pp. 88, 103).  When asked what equipment was furnished by Covenant, Plaintiff replied "[j]ust a uniform" (*Id.* at 103). Accordingly, the court concludes that this factor weighs in favor of finding that Plaintiff was a borrowed employee of Air Products.

## Was the new employment over a considerable length of time?

In *Hall v. Equitable Shipyards, Inc.*, 670 So.2d 543 (La.App. 4 Cir. 1996) the court found that six months of employment supported a finding of borrowed servant status and cited *Capps*, 784 F.2d 615 (5th Cir. 1986) (holding that one day's employment did not bar a finding of borrowed employee status).

Plaintiff's testimony established that, while employed by Covenant, she worked at the Air Products plant from April 17, 2006 until she was terminated in August of the same year (doc. 28, Ex. A, pp. 101, 134). During the entire period she was only assigned to work at Air Products (*Id.* at 139). Accordingly, the court concludes that Plaintiff's employment was over a considerable length of time. This factor, therefore, weighs in favor of a finding that Plaintiff was a borrowed employee.

## Who had **the right to discharge the employee?**

"This requirement is met if the borrowing employer has the authority to terminate the employee's work at the job site." *Hall*, 670 So.2d at 547 (quoting *Capps*, 784 F.2d at 615). Article 13 of the contract between Covenant and Air Products provides that "[s]hould [Air Products] deem anyone employed on the work incompetent or unfit for his duties and so inform Contractor, Contractor shall immediately remove such person from work under this Agreement and he shall not again, without written permission of [Air Products], be assigned to work under this agreement" (doc. 21, Ex. C). Plaintiff also testified that she was aware that Air Products could have her terminated (doc. 28, Ex. A, p. 106). Therefore, the court concludes that this factor weighs in favor of a finding that Plaintiff was a borrowed employee.

## Who had **the obligation to pay the employee?**

This factor focuses on who provided the funds used to pay Plaintiff rather than from which employer's bank account the employee's paychecks issue. *Sanchez v.*

16

*Harbor Const. Co., Inc.*, 968 So.2d 783, 789 (La.App. 4 Cir. 2007).  The Fifth Circuit has held that this factor supports a finding of borrowed employee status if the borrowing employer paid the direct employer an hourly rate for the employee and the employee was then paid by the direct employer.  *Melancon*, 834 F.2d at 1246; *Alleman v. Omni Energy Services, Corp.*, 512 F. Supp.2d 448 (E.D.La. 2007).

The purchase order, pursuant to which Covenant assigned Plaintiff to Air Products, provided that work performed on a lump sum basis would be invoiced upon completion of the work.  Work performed on the basis of time and material was also to be invoiced and the invoices were to be accompanied by daily reports listing the times and trades used.  The daily reports had to be promptly approved by an Air Products representative or Air Products was not obligated to pay the accompanying invoice.  (doc. 21, Ex. C, Art. 3).

The evidence does not demonstrate whether the work performed by Plaintiff was invoiced on a lump sum basis or on the basis of time and material.  The court, therefore, must construe this evidence in favor of the non-movant and conclude that this factor weighs in favor of a finding that Plaintiff was not a borrowed employee.

All of the nine factors except the fifth and ninth support a finding of borrowed employee status.  The fifth factor is neutral and only the ninth factor weighs in favor of finding that Plaintiff was not a borrowed employee of Air Products.

Accordingly, the court concludes that the evidence establishes that the plaintiff, Rosalind Youngblood, was a borrowed employee of Air Products as a matter of law.

Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff limits her opposition, however, to disputing the control factor and disputing whether Plaintiff can be a borrowed employee of Air Products despite language in the purchase order to the contrary. The court has already addressed both arguments during in the course of its evaluation of the nine factors used by the Fifth Circuit to determine borrowed employee status.

## CONCLUSION

Accordingly, the motion for summary judgment (doc. 20) by defendant, Air Products and Chemicals, Inc., is hereby **GRANTED** and all of Plaintiff's claims against Air Products and Chemicals, Inc. shall be **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, January 15, 2008.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

18